UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEANNA LISIECKI,

    Plaintiff,

-vs-

Case No. 08-12380
HON. AVERN COHN

BANK OF AMERICA, N.A.,

    Defendant.
_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT BASED ON JUDICIAL ESTOPPEL[1]**

**I. INTRODUCTION**

This is an employment retaliation case. Plaintiff Leanna Lisiecki (Lisiecki) says that defendant Bank of America, N.A., (BOA) f/k/a LaSalle Bank Midwest (LaSalle) discriminated against her on the basis of a disability and retaliated against her for filing an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC). The complaint is in three counts:

(I)    Violation of Title VII [42 U.S.C. § 2000e]—Retaliation

(II)    Violation of the Michigan Elliott-Larsen Civil Rights Act [ELCRA] [M.C.L. 31.2101 et seq.]—Retaliation

(III)    Violations of the Family and Medical Leave Act of 1993 [FMLA] [29 U.S.C. §§ 2601 et seq.]

---

[1] The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

1

Before the Court is BOA's motion for summary judgment based on judicial estoppel. BOA says that in proceedings for her personal bankruptcy claim, Lisiecki repeatedly failed to disclose the fact that she was considering a lawsuit against LaSalle. Lisiecki says her failures to disclose were inadvertent and she did not derive a benefit from them. For the reasons that follow, the motion is GRANTED.

## II.  FACTS

The facts are taken from the parties' pleadings, briefs, joint statement of material facts not in dispute, and exhibits, including Lisiecki's discovery deposition. The following time line gives a chronology of significant events.

Mar. 2007  LaSalle terminated Lisiecki after she used all of her FMLA leave and failed to return to work.

Aug. 2007  Lisiecki filed a Charge of Discrimination with the Michigan Department of Civil Rights and the EEOC.

Feb. 2008  Lisiecki filed for Chapter 7 bankruptcy while her EEOC case was pending. On the Statement of Financial Affairs for her bankruptcy petition, where a debtor is requested to "list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," Lisiecki responded, "None."

Mar. 7, 2008  Lisiecki received a Right to Sue letter from the EEOC.

Mar. 19, 2008  At a hearing in the bankruptcy case, Lisiecki testified under oath that she recalled sitting down with her attorney to prepare the petition and related documents. She also testified that all the information in the documents was and remained completely truthful and accurate.

The trustee asked, "Are you suing anyone or considering suing anyone?" Liesicki answered, "No."

May 19, 2008     This was the deadline set for filing objections to discharge of Lisiecki as the debtor or certain of her debts.

May 20, 2008     The trustee made a docket entry reporting that a creditors meeting was held on March 19, 2008, after which he concluded there were no assets to administer for the benefit of the creditors of Lisiecki's estate.

June 4, 2008     Lisiecki filed her Complaint in this case.

July 8, 2008     The bankruptcy court issued a final decree closing Liesicki's bankruptcy case and discharging the trustee. Because Lisiecki failed to complete a required instructional course, however, the case was never discharged.

Nov. 19, 2008     In answer to BOA's first set of interrogatories in this action, Lisiecki stated: "Plaintiff's only involvement with a previous legal proceedings, involved Plaintiff's 2006 divorce."

Jan. 7, 2009     In her discovery deposition, Lisiecki was asked the following question: "[Y]our divorce proceeding in September 2006, this lawsuit filed in June 2007, and your EEOC charge of discrimination were your only legal filings, administrative or any type of court?" Lisiecki responded, "Yes." BOA's counsel followed up by asking, "Have you ever filed for bankruptcy?" Lisiecki responded, "Yes."

Lisiecki testified that she did not inform her bankruptcy attorney about her pending or potential lawsuit against LaSalle because she "thought that was something confidential that I was going through and personal."

Lisiecki also testified that she has not received any bill from

3

or paid any money to any of the creditors listed in schedule F of her bankruptcy petition since her bankruptcy case was closed.

### III. LEGAL STANDARD

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

### IV. ANALYSIS

#### A.

Under the doctrine of judicial estoppel, once a party succeeds in maintaining a certain position in a legal proceeding, the person may not later take a contrary position

just because the person's interests are different. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of the doctrine is to "protect the integrity of the judicial process," id. (internal quotation marks omitted) (quoting Edwards v. Aetna life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," id. at 749–50 (internal quotation marks omitted) (quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)). Three factors typically are present: (1) clear inconsistency between a party's earlier and later positions, (2) the party's success in persuading a court to accept the earlier position, and (3) derivation of an unfair advantage or imposition of an unfair detriment on the opposing party if not estopped. Id. at 750–51. These are not inflexible prerequisites. Id. at 751.

In addressing the issue of whether a party's failure to disclose pending or potential claims in a bankruptcy petition bars the person from pursing that claim, the Sixth Circuit focuses on the first two factors. Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" Id. (quoting Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)). Pursuing a cause of action not disclosed as an asset in a bankruptcy proceeding creates an inconsistency sufficient to support consideration of judicial estoppel, as the debtor has already asserted the position that no such claim exists. See Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 898 (6th Cir. 2004); Browning, 282 F.3d at 775.

Section 521(1) of the Bankruptcy Code requires a debtor to file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. 11 U.S.C. § 521(1). A debtor has an affirmative duty to disclose all assets to the bankruptcy court, Eubanks, 385 F.3d at 897, and a legal claim or cause of action is an asset that must be listed under § 521(1), see id. at 897–98. A bankruptcy court implicitly accepts a debtor's statements regarding the absence of any legal action on the schedules or financial statement when discharging a debt. In re Johnson, 345 B.R. 816, 822 (Bankr. W.D. Mich., 2006); Stallings v. Hussmann Corp., 447 F.3d 1041, 1048 (8th Cir.2006) ("[W]here the bankruptcy court issues a 'no asset' discharge, the bankruptcy court has effectively adopted the debtor's position.").

Judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence. Browning, 283 F.3d at 776. In the Sixth Circuit, the two circumstances under which a debtor's failure to disclose a cause of action in a bankruptcy proceeding might be deemed inadvertent are: (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims, and (2) where the debtor has no motive for concealment. Browning, 283 F.3d at 776.

Evidence of an absence of bad faith, such as where plaintiffs continuously took steps to notify the bankruptcy trustee of their pending litigation prior to the defendant's filing its motion to dismiss on the basis of judicial estoppel, will also be considered. Eubanks, 385 F.3d at 894–95. As this Court has previously noted, the burden of establishing the absence of bad faith is on the plaintiff when the defendant has shown that the plaintiff possessed knowledge of the factual basis of the claims and had motive

6

to conceal them from the bankruptcy court.  Maxwell v. MGM Grand Detroit, L.L.C., 2007 WL 205095, at *7 (E.D. Mich. 2007).

**B.**

**1. Contrary Positions**

Lisiecki says her assertion in the bankruptcy court that she was not considering suing anyone was not inconsistent with her present claim because during bankruptcy proceedings "the only thing she had in her possession was the Right to Sue letter" from the EEOC and she "could have just as easily determined that she did not want to live through the long evasive [sic] process of litigation."  With this statement, however, she admits that she was "determin[ing]" whether to sue.  The facts that Lisiecki already had the Letter to Sue, was determining whether to sue, and filed suit two weeks after the Trustee docketed his finding that there were no assets to administer for creditors are evidence that she has asserted a position contrary to her statement that she was not considering suing anyone.

**2. Acceptance by Bankruptcy Court**

Lisiecki says the Court should not treat her statement that she was not considering suing anyone as accepted by the bankruptcy court because her case was never discharged.  This argument is misguided.  The bankruptcy court accepted her position when it closed the case and discharged the trustee following his finding that there were no assets to administer.  It was not a lack of acceptance of her position by the bankruptcy court but rather Lisiecki's own failure to complete a required instructional course that prevented her debts from being discharged.  The Court is constrained to

7

note, moreover, that Lisiecki has thus far enjoyed the benefits of a discharge in that no creditors have contacted her to demand payment and she has paid nothing to them. Further, there is no evidence that she has informed her creditors that the debts were not actually discharged.

### 3. Inadvertence

Lisiecki says her failure to disclose her potential or pending action against LaSalle was inadvertent because her bankruptcy attorney failed to inform her of the need to disclose such a claim. As the Court has previously held, however, a plaintiff is bound by the actions of her attorney and has the responsibility to verify the accuracy of the information on the bankruptcy schedules and statements filed on her behalf, particularly as she signs an oath swearing that she has personally reviewed the documents and found them to be truthful and accurate. Maxwell, 2007 WL 205095, at *8.

Further, and more significantly, Lisiecki testified that she intentionally withheld the fact of her potential lawsuit against LaSalle from her bankruptcy attorney because it was "confidential" and "personal" information. This testimony is evidence that Lisiecki was aware of the factual basis of her undisclosed claim. She does not dispute such awareness.

The motive to conceal the claim from the bankruptcy court is clear: to prevent potential damages from a lawsuit from becoming part of the estate in bankruptcy. See Lewis v. Weyerhaeuser Co., 2005 WL 1579713, at *5 (6th Cir. 2005) ("It is always in a [bankruptcy] petitioner's interest to minimize . . . assets." (quoting the trial court)).

Lisiecki therefore bears the burden of showing an absence of bad faith. She has

failed to proffer evidence to meet this burden.  Unlike the plaintiffs in Eubanks, 385 F.3d at 894–95, Lisiecki took no steps at any time to notify the bankruptcy court of her potential or pending lawsuit.  Further, Lisiecki compounded her lack of candor in the judicial process when, in her deposition in this case, she concealed her bankruptcy case when specifically asked about  "legal filings, administrative or any type of court."  Only after being asked in a follow-up question whether she ever filed for bankruptcy did Lisiecki reveal her bankruptcy filing.  This "playing fast and loose with the courts" is precisely what the doctrine of judicial estoppel exists to prevent.  New Hampshire, 532 U.S. at 750 (internal quotation marks omitted) (quoting Scarano v. Cent. R. Co., 203 F.2d 510, 513 (3d Cir. 1953)).

## V.  CONCLUSION

For the reasons stated above, the Court has granted defendant's motion for summary judgment based on judicial estoppel.

SO ORDERED.


Dated:  May 19, 2009    s/ Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 19, 2009, by electronic and/or ordinary mail.

                                                 s/ Julie Owens
                                                Case Manager, (313) 234-5160